Good morning, everyone. We have one case to be argued today, and that's Rosas v. Garland, and Ms. Bolt, you may proceed. First, thank you for appearing pro bono. Thank you, Your Honor. May it please the Court, Brenna Bolt, pro bono counsel for Petitioner Oliver Rosas Rosas. I'd like to reserve four minutes of my time for rebuttal. At just 24 years old, Oliver is facing removal to a country that he left when he was only three and where he fears torture by Mexican cartels and law enforcement. The agency rejected Oliver's CAT claim based only on likelihood, finding that he had failed to establish a particularized risk and that he would more likely than not be tortured. But in doing so, the agency failed to grapple with all aspects of Oliver's claim and the evidentiary record before it. As an example of this, I'd like to first turn to the relocation finding that Oliver could safely relocate within Mexico based on the rationale that his grandmother, aunt, and uncle had safely relocated from Guerrero after his grandfather's disappearance. This analysis narrowly focused on one aspect of Oliver's claim, namely his fear of torture by cartels because of his family membership, and did not grapple with his risk of torture by cartels because of his tattoos or former gang membership or his risk of torture by police at all. The agency therefore failed in its obligation to consider Oliver's CAT claim as a whole, and on remand should determine whether Oliver can safely relocate, considering all aspects of his claim. Ms. Bolt, the claim about being targeted by the cartels for his tattoos, I take it there isn't anything in the record that suggests a particularized risk that the cartels might target him for some other reason? For some other reason other than his... Other than just a person that has tattoos or gang-related tattoos on his body. The agency found that there was no particularized risk because the country conditions evidence was general, but in Guerra v. Barr, this court found that where evidence about the vulnerability or evidence about the vulnerability of certain populations to which the applicant belongs is relevant to the particularized risk and likelihood analysis. Here, the agency gave no explanation for why the country conditions evidence about deportees was not specific to Oliver, and its only reason for finding that the evidence about gang members or cartels recruiting gang members wasn't relevant to him was because Oliver testified that he was a former and not a current gang member, but the agency contradicts that rationale three sentences later, where it finds that if identified for recruitment, he would not be targeted for torture because cartels prize gang members, and gang members often work for cartels. So we're reviewing this under substantial evidence, and the agency has put forward this notion that recruited gang members would not be tortured. What's the evidence in the record that would compel the conclusion that if he were recruited and did not want to participate, that he would be tortured by a cartel member? Sure. Oliver presented within the country conditions evidence at AR, I believe, 352. Professor Jeremy Slack mentions in an article that those who refuse to work for cartels are killed, and Oliver also presented the testimony of his expert witness, Ms. Laura Castellano, who testified at 724 that those who refuse to cooperate with cartels are killed. And while the briefing, I know, argues substantial evidence, this court does not overlook the legal errors in the agency's analysis before reviewing, or to just get to substantial evidence. It also needs to look at the legal errors in that analysis. So tell me what you think are the most serious legal errors. Finding this evidence that, ignoring the evidence that Oliver presented because the agency concluded that it was general and that evidence provides important context to his claim. Are you specifically referring to the expert report? That was an error as well, Your Honor, yes. I'm describing it as a separate error. Okay, finish your first error. So this court has consistently, since Colby Holder and all of its progeny, found that failing to grapple with material record evidence is a legal error. And here the agency dismissed Oliver's country conditions evidence because it was general, but without providing any dispositive reasoning as to why. I mentioned earlier it didn't describe why the country conditions evidence about deportees wasn't specific, and its rationale that the evidence about cartels wasn't specific is contradicted by a later finding. Well, for better or worse, we have many cases saying that generalized country conditions reports aren't sufficient to sustain a CAT claim. So why is it error for the agency to rely on that reasoning that have been in our prior cases? That's correct, Your Honor, but the agency can't then also fail to grapple with testimonial evidence that the applicant provides to push himself over that 50% threshold. So here Oliver had his aunt testify, he had Ms. Lymphangelina Contreras testify, and he had his expert witness, as Honor Wardlaw mentioned, testify. Sorry. No, go ahead. So the way I look at it is you have generalized evidence and that may not be sufficient, and what can put you over the line is when it starts to be a little more particularized, that risk. Did any of his family members' testimony suggest a particularized risk of harm from the cartel, that they had an interest in him, or from the police, or somewhere else? His aunt testified that tattoos are uncommon in Lazaro Cardenas, where Oliver would live, and that people with tattoos are discriminated against. Ms. Evangelina Contreras testified that her son, who returned to Michoacan from the U.S., who had a large tattoo on his chest, was detained by police and handed over to the cartels. And the expert specifically opined as to Oliver's risk of torture, describing that he fits the profile of youth kidnapped and targeted by cartels to work for them, who can be tortured, murdered, or disappeared. That's at AR-721. And the agency gave no explanation for why this evidence wasn't sufficient to meet Oliver's burden. She also testified that the only reason that the agency gave for rejecting her testimony as to police was that it failed to show all government officials are corrupt and police are more likely than not to target all deportees. But this wasn't the burden that Oliver was being held to. Oliver was only required to show a 50% likelihood of torture, and by requiring Ms. Castellanos' testimony to show that he would be tortured to a near certainty, the immigration judge erred by rejecting that testimony. Do we know why his uncle and his grandfather were targeted by the cartel? I believe the record describes, or the record does describe, that they were targeted because his grandfather had refused to cooperate with cartels who wanted trucks that had been seized by the town to be given back, and his grandfather was a political figure. But again, that's only one aspect of Oliver's claim, and the contradictory evidence and testimony that the agency doesn't grapple with really deals with his tattoos and former gang membership, those aspects of his claim. I think at the hearing, or maybe it was in the IJ's decision, I can't remember now, but I think the IJ said something about, well, he can cover up his tattoos, or he testified that he could possibly get them removed or that he could possibly have them restylized, I think. And if you look, the tattoos really, in comparison to what we sometimes see, they weren't on his neck, they weren't on his face. What's wrong with that? What's wrong with the IJ's reasoning there? The immigration judge did find that Oliver could remove his tattoos or wear long sleeves for the rest of his life to cover them because his tattoos are mostly on his arms as well as one on his hand. But Oliver testified that removal isn't a good option for him because it takes multiple sessions in which he would still be at risk, it costs money that him and his family don't have, and it would leave scars behind that would still be identifiable. The immigration judge also failed to grapple with evidence in the record that cartels, I believe it's at AR 830, cartels will sometimes ask people to remove their shirts to look for tattoos, so if Oliver were wearing long sleeves, that wouldn't help him. And another indication that the agency failed to grapple with the country conditions evidence here is that one of the agency's rationales for rejecting his claim was that Oliver hadn't identified any similarly situated gang members tortured upon removal to Mexico. But Oliver presented a country conditions article at AR 819 that specifically describes a former gang member with the same three-dot hand tattoo who after being removed was found with his hands bound and shot. So that is an indication that the agency hadn't grappled with that evidence where it's not mentioned. How do we know that the agency didn't grapple with that evidence but just didn't find it compelling enough to go in your favor? In other words, when we have cases that talk about the agency's failure to grapple with material evidence, it's oftentimes documentary evidence or something more specific to a particular case. But here we're dealing with something a little more generalized with the different country conditions evidence, and I guess the government might say you're just trying to re-weigh the evidence. So how do we address whether you're trying to re-weigh it or whether they materially erred in some way? This court in cases such as Parada v. Sessions has found that where the rationale provided by the agency for why the country conditions evidence wasn't sufficient is directly contradicted by something in the record. That is an indication the agency didn't grapple with that evidence. The country conditions article I just gave is an example of that. This court has also found that country conditions evidence, especially in a case like this where Oliver has not been in Mexico since he was 3, is very important in a CAT application and can be sufficient to meet that burden. Here Oliver didn't just rely on the evidence. He also presented the testimonial evidence and the expert witness testimony that the agency didn't grapple with. I see I'm running out of time, but I'd like to quickly mention a last finding by the agency that the harm that Oliver feared from police wouldn't rise to the level of torture, and the agency described that harm as being pulled over, detained, and severely discriminated against. But Oliver repeatedly asserted a fear of torture and being killed by police and even testified specifically that he feared being harmed in interrogations. Because of the agency's misunderstanding about his claim, it again failed to grapple with the evidence about his risk of torture by police. For example, a State Department report corroborates his fear of being tortured by police to obtain confessions and states that police use torture such as sexual abuse and there have been instances of arbitrary killings. A Human Rights Watch report also says that 64% highlights one survey that said 64% of people incarcerated in 2016 had experienced violence at the time of arrest, such as electric shocks, choking, and smothering. And again, Ms. Castellano testified that it is common for youth with tattoos to be stopped by police, arrested, threatened and extorted, or even beaten, murdered, and disappeared. And I'd like to reserve the rest of my time for rebuttal. All right, thank you very much. Nancy Pham May it please the Court, Nancy Pham for the Attorney General. Your Honors, this Court should deny the petition for review because substantial evidence supports the agency's determination that Petitioner failed to establish his eligibility for the deferral removal under CAT. The record evidence does not compel the conclusion that Petitioner established the clear probability of torture, as we've been discussing this morning. Specifically, that he failed to demonstrate that particularized risk of torture by either the Jalisco cartel or law enforcement in Mexico. Framing this entire case in this record is the standard of review here. As Judge Santos mentioned, substantial evidence. That's a highly deferential standard, and the question for judges reviewing the agency's decision is whether any reasonable adjudicator could have found, as the agency did. Put another way, in order to reverse the decision of the agency, every reasonable fact finder had to decide the opposite. What if there's legal error? If there's a legal error, then that is a different standard. You're correct, Your Honor. The counsel is basically arguing that there was legal error. The counsel is arguing that there's legal error in that, I believe she phrased it that the agency didn't grapple with the evidence. But when you look at the agency decisions, they mention specifically all the pieces of evidence, the testimony of Petitioner, the testimony of his aunt, the specific expert reports. So certainly the agency in the record is clear that the agency considered the entire record. There's one piece in the BIA's decision that sort of stuck out with me. In the decision that the BIA wrote, large numbers of gang members are deported to Mexico from the United States yearly, and Rosa Rosa has not specifically identified any similarly situated gang members who have been tortured upon removal to Mexico. That's the BIA. But if you look at all that country conditions evidence, and as counsel just pointed out, there were specific references to gang members who had similar tattoos and whatnot who had suffered torture, and there are articles to that effect. But the BIA just seems to ignore them. The agency did not ignore that evidence, Your Honor. They did consider it in the areas that you mentioned, but specifically when we talk about the particularized risk, that evidence would look more along the lines of, you know, is there any evidence of, you know, pardon me, of members of the same gang, or is there in case law, in many of the cases that the petitioner mentions in their brief, it's things where the member is specifically targeted, whether there's a threat in the past, there's already actually some action, like a beating, something to tie that member to the risk of torture. What about the expert report? The expert report is evidence that he would be targeted. Yes, sir, generally, though, gang members generally. There's nothing in the expert report that covers, you know, someone from his gang or someone with his specific tattoos. And the government is not saying that that evidence should be discounted. Certainly it should not. It is evidence that's in the record that the agency probably considered. But there's not the evidence that rises to show that this member, that this petitioner, is at a particular risk of torture. What to you would rise to that level? Because what bothers me about this BIA decision is it doesn't even mention the expert report, and the expert opines that his fear is reasonable, which means objectively reasonable. I mean, it's clear he has a subjective fear. And this is an odd, I don't know if it's odd or unusual, but he can't show past persecution because he left the country when he was three. So requiring him to show past persecution kind of seems unfair. So we have to look at, and we have evidence of subjective fear, and then we have the expert report that's objective. It's evidence that his subjective fear is objectively reasonable. And the BIA doesn't mention the expert report. Right. The BIA, in affirming the immigration judge's decision, doesn't spend a lot of time mentioning the expert report. But in reviewing the immigration judge's decision, the immigration judge does review and consider that report and mention Ms. Castellano. And I understand the court's concern. The government is not trying to argue that there's no risk here. There's certainly evidence of that. But when we look at case law, in one of the cases that I think a petitioner mentions in their brief, it's Barajas-Romero. In that case, the petitioner was targeted by police but had been specifically marked on the forehead and threatened that that mark will be where the bullet hits anywhere in the country. It's things like that that we have actual evidence of the record that shows that this petitioner, that this member, was targeted and has that threat of future torture in their home country. And in this case, there is, you know, evidence of these generalized conditions, but there's nothing about even, you know, petitioner's specific age. Are you saying there should be evidence, they need to come forth with evidence that the particular tattoos that he has are linked with gangs that are persecuted in Mexico? The government's not saying that that's absolutely required, but that would be a factor that would be considered, and that would, in the totality of the circumstances, looking at all the relevant conditions, potentially, you know, bring that petitioner, that member, above that, more likely than not standard. In this case, though, the petitioner has failed to establish that particular risk of torture by the Jalisco cartel, and we rely on matter of JFF. In this case, it's not, you know, just about the tattoos. It's that whole chain of hypothetical events that must happen for petitioner to prove that or establish that his risk of torture rises to that more likely than not standard. So each link of that chain has to be proven by more likely than not. So if you go through the chain, as I understand it, he's deported, he gets deported, and the evidence would have to show that, as a recent deportee with tattoos, he would be identified as a gang member. Correct? Right. Now, isn't there pretty strong evidence that that would happen? Isn't there? The government's position that there's not, well, there's, you know, some evidence in case law of, you know, members that, petitioners that have tattoos and were targeted. There's not in this case, as you pointed out, Your Honor, you know, where typically tattoos are, you know, on the face and the neck. I would really encourage Your Honors to look at the record. I believe it is AR 540 to 543. There's actually pictures of the tattoo. I've looked at them carefully. Yes, Your Honor. So, I mean, they're on his left arm basically from his elbow to his wrist. And, you know, the main tattoo is like a P in a sort of Roman font, which, so that's just one link in the chain that, one, he's deported, two, that gang members notice him, that they notice that his tattoo, they notice that that tattoo is connected to, you know, gangs, and that from there they would recruit him, and that he would refuse the recruitment, and then that would lead to torture. So if you look at the evidence with respect to recruitment, the expert reports and the other evidence, this country conditions evidence, all seems to suggest that having been a, if he, with those tattoos, he would be a likely candidate for recruitment by the cartels. The evidence suggests that he could be a candidate, but does in the totality, does that get us to more likely than not? And then framing that is that under the substantial evidence standard, essentially to reverse or to grant this petition for review, every single reasonable fact finder would have had to disagree with the agency in this case. So we have sort of two steps there, the actual more likely than not standard and then the, excuse me, the substantial evidence standard here before this court. If you finish that hypothetical chain, I mean, we did take a look at this chain. Likely, he says he was no longer a gang member and he wouldn't join, he would not voluntarily go with a cartel if they tried to recruit him. And then there's evidence that says, in the record, that shows that if people don't go along with the cartels, you know, they're not treated very nicely. Right, Your Honor. There is evidence in the record that this petitioner would basically refuse recruitment and that there is some evidence that, you know, once recruited, if they basically, like, refuse that there's a possibility of torture. But again, the standard is every single link, more likely than not, you know, deported, noticed by the cartel, tattoos noticed, tattoos connected with gang affiliation, and then the recruitment and the steps we just mentioned. And the government's position is that reviewing this record, the evidence just doesn't support that standard. And specifically, as to the point of recruitment, there is evidence in some of the country conditions reports that gang members in prison who are active and who are known to have a high likelihood of deported actually do start getting recruited in prison. But here, petitioner, based on his testimony, in the record, was not recruited, even though he was known to be a likelihood candidate for deportation. That evidence seems to cut against the agency to some extent because it just confirms or shows more that the cartels are interested in recruiting gang members. And the government's not denying that point, Your Honor, but the evidence demonstrates that that interest extends to prisons in the United States. Petitioner was in prison for a period, I believe, about four years and experienced no recruitment, no interest by gangs, no threats. He testified to none of that. We have no evidence of that in the record. And again, in case law, we have examples where there's some step that actually connects this person, this petitioner or member, to the threat of torture to make the rise to that standard of more likely than not. Can I ask you to address counsel's argument about the agency's internal relocation finding and whether that was error or not? The government's position is that that is not error. There's no legal error there. The immigration judge spends time discussing and analyzing the relocation point. And again, just taking a step back, relocation is just one of those factors in evaluating the CAT claim, right? So the agency must consider all relevant evidence, no one factor is determinative. So relocation is an example in Maldonado of one of those factors. So the immigration judge spends time discussing that the mother and I believe the uncle that was related to them and helped them relocate, that they were able to successfully relocate, that more than 15 years has passed since the grandfather and the uncle had been targeted and that they've lived safely. And so there's no error where the agency has discussed and analyzed it. I mean, I suppose that would be true if the basis for targeting were the prior family members. But if it's more driven by gang identification and tattoos, does relocation – I mean, the cartels do seem to have a national reach. Does internal relocation require a different analysis at that point? Potentially it would if that is triggered by the evidence. And here we didn't have anything specific in the record to show that these tattoos would be any different than any person essentially relocating to this town. What we do know is that family members directly connected to him and to his grandfather and uncle obviously were able to successfully relocate and have lived there peacefully for over 15 years. And the agency did address that and analyze it properly. And so the government would just like to end with just stressing that in this case we have a chain of many hypothetical events. Every single one of those links has to be proven by more likely than not standard. Any failure in one of the links makes the claim fail, but the government's position is that the entire chain fails. Again, substantial evidence, that highly deferential standard means that the question is whether any reasonable adjudicator could have found as the agency did. And under that standard, the government is respectfully requesting this court to deny the petition for review. Thank you, counsel. Ms. Bowles. Your Honor, I mentioned the expert testimony, and I'd like to point to AR721 through AR724, which in that section of the expert declaration she does opine specifically as to Oliver's risk. And AR722, she says specifically, persons between the ages of 15 and 34 are among the most vulnerable population because they have the highest cases of disappearances in Mexico. And as for the relocation analysis, the government points to Santos Lemus as analogist, but a better case here to look at would be Vasquez Rodriguez, where this court found that Vasquez Rodriguez's uncle's ability to remain in the country, even though Vasquez Rodriguez had supported his political campaign, was not relevant to the applicant's risk of torture by police for being a suspected gang member. And again, this court does not need to overlook the legal errors in the agency's analysis to reach substantial evidence. Another indication that the agency didn't properly consider the evidence is on AR98, where the agency says that there is no reason anyone in Mexico, no evidence that anyone in Mexico is waiting or is looking for the respondent for any reason. But the border report article at AR, I apologize, I think it's 276 or 376, says cartels literally wait for gang members to enter Mexico to be targeted. So while the agency is free to deny a CAT claim, it's not free to ignore country conditions evidence that establishes the context of an applicant's claim and then also fail to grapple with the witness testimony, especially where the applicant has supplied an expert witness's opinion specific to him and the agency has given no reason why that expert's testimony was rejected, no legally sufficient reason to breach that decision. What's your strongest case that Mr. Rosas would be more likely tortured because of his tattoos? The strongest case would be, as in case law, Your Honor? Case law. In the briefing, I believe we point to Maldonado v. Lynch and of course Cole v. Holder. You think Cole is your strongest case? I think Cole is the strongest case because it points to the legal errors in this case, where the agency, again, took a shortcut in reaching its decision. Thank you, Your Honor. Thank you very much, counsel. Rosas v. Garland will be submitted. Romero v. Garland has previously been submitted, and the session of the court will adjourn for today. Thank you both for your arguments. All rise. This court for this session stands adjourned.
judges: WARDLAW, PAEZ, SANCHEZ